Richard S. Heller, J.
These three claims arose from the same series of events and were tried together.
On June 2, 1952 a State highway known as U. S. Route 9, running northerly from the village of Schroon Lake to an intersection some miles north of the village with Route 73, was a two-lane concrete road, each lane being about 10 feet wide. Two- or three-tenths of a mile south of the intersection of Routes *964 9 and 73, Route 9 goes up a grade to the top of a knoll and from that point to the intersection runs in a straight line on a down grade.
June 2, 1952 was a clear, sunny day and the pavement was dry. At about 5:30 p.m. the visibility was good. Going northward up the knoll south of the intersection of Routes 9 and 73, claimant Whitty was operating his 1948 Mercury convertible with claimant Kraeling riding as a passenger, followed by an automobile operated by one Fleming whose automobile was in turn followed by claimant Gero riding his 1948 Harley-Davidson motorcycle. The three vehicles were traveling between 30 and 35 miles per hour.
At the top of the knoll when claimant Gero could see that there was no southbound traffic, he swung out into the southbound traffic lane and increased his speed some five to ten miles per hour and proceeded to pass the car operated by Fleming and the Whitty car. Claimant Gero travelled some 400 to 450 feet in the southbound traffic lane passing both cars and 40 to 50 feet ahead of claimant Whitty’s automobile Gero turned five to ten degrees to the right to re-enter the northbound traffic lane.
As claimant Gero crossed the joint between the southbound lane and the northbound lane his motorcycle started to wobble and he had difficulty controlling it. Claimant Gero was thrown from the motorcycle and he rolled down the highway and finally over a bank on the right-hand side of the highway. Claimant Whitty observed the wobbling of the motorcycle and saw claimant Gero fall off the motorcycle and without applying his brakes he turned his car into the ditch to the right of the highway.
All three claims rest upon a contention that claimant Gero lost control of his motorcycle due to the unsafe condition of the joint between the pavement of the southbound lane and the northbound lane. Claimants assert that the condition of this joint constituted negligence in the maintenance of the highway by the State and that the State was further negligent in failing to give any warning of a dangerous condition.
Claimant Gero described the circumstances of the accident “As I swung onto my side I hit this ravine in the road, like, and the motorcycle went out of control weaving back and forth ”. He had owned this particular motorcycle for some two months and he had travelled this stretch of highway twice a day, five days a week, for some two and a half months. At no time had he ever noticed any unusual separation of the pavement until his wheel ‘ ‘ went into it after I passed the automobile. ’ ’
*965 After the accident he went back to the scene and he describes the separation as “ around three inches or more wide ” but he made no actual measurement. Again without actual measure- ■ ment he believed that the separation was about two inches deep and extended for some 75 to 100 feet.
An employee of the State who had done maintenance work on this stretch of highway from 1941 to 1955 described the separation as being about two inches wide in his judgment although he had never measured it and he described the method by which tar was placed in the separation between the two lanes of pavement each fall. There was no difference in elevation between the two panels of pavement.
Claimant Whitty asserted that for some year and a half prior to the time of the accident he had observed that the separation between the two lanes of pavement in this area was wider and deeper than in other places on the road. He returned to the scene after the accident and asserts that he used a ruler and measured a separation of from two to three inches which extended for a distance which he paced as about 70 feet. He also asserted that the pavement of the northbound lane varied from a quarter to three quarters of an inch higher than the south bound lane.
There were inconsistencies in the testimony given by claimant Whitty as to the existing conditions and there were inconsistencies between his testimony and the testimony of claimant’s other witnesses. Claimants failed to establish by a fair preponderance of proof any violation by the State of its obligation to construct and maintain its highways in a reasonably safe condition in accordance with the terrain encountered and traffic conditions to be reasonably apprehended. (Boyce Motor Lines v. State of New York, 280 App. Div. 693, affd. 306 N. Y. 801.) Generally a highway is reasonably safe when people exercising ordinary care travel over it safely. There is no evidence here that this highway failed to meet that test.
The motion made by the State at the close of the evidence for dismissal on the ground that claimants failed to prove a cause of action and failed to prove any negligence on the part of the State of New York on which decision was reserved, is hereby granted and the claims dismissed.
"Enter judgment accordingly.